UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INDEMNITY INSURANCE COMPANY
OF NORTH AMERICA,
                          Plaintiff,

                -v-

AGILITY LOGISTICS CORPORATION,
                          Defendant.

16-CV-9731 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

The Montreal Convention imposes liability on air carriers for "destruction . . . of . . . cargo," "loss of . . . cargo," or "damage to . . . cargo."  In this case, a carrier transported a jet engine on the wrong type of truck.  That mistake required the recipient to do a costly inspection, which ultimately revealed no transport-related damage.  This raises the novel question of whether the Montreal Convention allows recovery of inspection costs even though there was no physical damage to any cargo.  For the reasons that follow, the answer is no.

I.      **Background**

Plaintiff Indemnity Insurance Company of North America is an insurance company.  Defendant Agility Logistics Corp. is a shipping company.

This suit concerns a jet engine shipped from Florida to Germany.  GE Capital Aviation Services arranged for Agility to transport the engine, which GE Capital had just refurbished.  Agility does not ship anything itself; rather, it arranges shipment with various carriers along the shipping route.  (Dkt. No. 45 ¶ 71.)  The parties dispute who exactly contracted with whom, but the basic chronology is as follows:

- GE Capital sends an "engine shipment request" to Agility, asking for the engine to be shipped from a company called LCI in Tamarac, Florida, to Lufthansa Technic in Alzey, Germany.  (Dkt. No. 29-2.)

1

- Agility sends a "spot quote" to GE Capital, listing LCI as the "shipper of record" and Lufthansa Technik as the recipient/consignee. (Dkt. No. 29-3.)

- The engine begins its journey. The air waybill exhorts: "All ground transportation must be full air ride." (Dkt. No. 29-6.) This means that every axle of the truck must have an air-ride suspension.

- The engine arrives safely in Frankfurt Airport. (Dkt. No. 45 ¶ 9.)

- The engine is loaded onto a tractor-trailer in Frankfurt Airport. The tractor-trailer is arranged by Agility's German affiliate, Agility Germany. (Dkt. No. 45 ¶ 12.) But while the trailer has an air-ride suspension, the tractor does not. (Dkt. No. 45 ¶ 16.)

- The engine arrives in Alzey. Lufthansa Technik is not pleased.

- Lufthansa Technik takes apart the engine to check for transport-related defects. The inspection turns up several defects unrelated to transport. There is no evidence that improper transport caused any damage. (Dkt. No. 45 ¶¶ 19–20.)

- Lufthansa Technik bills GE Capital $177,450.07 for the inspection cost. (Dkt. No. 45 ¶ 21; Dkt. No. 29-12 at 1.)

- Indemnity—GE Capital's insurer—pays GE Capital $127,450.07 for the inspection bill. (Dkt. No. 29-13.)

- Indemnity sues Agility for the inspection costs.

Indemnity asserts subject matter jurisdiction under 28 U.S.C. § 1331, because its claims arise under the Montreal Convention, a United States treaty. Both parties now move for summary judgment.

## II.    Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense." *Cohen*

*Lans LLP v. Naseman*, No. 14 Civ. 4045, 2017 WL 477775, at \*3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4652548, at \*3 (S.D.N.Y. Sept. 18, 2014). The court views all "evidence in the light most favorable to the non-moving party," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (second quoting *Lunds, Inc. v. Chem. Bank*, 870 F.2d 840, 844 (2d Cir. 1989)) (internal quotation marks omitted).

## III. Discussion

The 1999 Montreal Convention applies to all "international carriage by air of persons, baggage or cargo performed by aircraft for reward." Convention for the Unification of Certain Rules for International Carriage, May 28, 1999 ("Montreal Convention") art. 1 ¶ 1, *reprinted in* S. Treaty Doc. No. 106–45, 1999 WL 33292734. The Montreal Convention replaced the patchwork of rules dating from the 1929 Warsaw Convention and its amendments. *See Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004). "Because many of the provisions of the Montreal Convention are taken directly from the Warsaw Convention and the many amendments thereto, the case law regarding a particular provision of the Warsaw treaty applies with equal force regarding its counterpart in the Montreal treaty." *Best v. BWIA West Indies Airways, Ltd.*, 581 F. Supp. 2d 359, 362 n.1 (E.D.N.Y. 2008).

There are three issues before the Court: (1) whether the Court has subject matter jurisdiction under the Montreal Convention, (2) whether Agility has standing to sue in GE

Capital's shoes, and (3) whether the Montreal Convention imposes liability for inspection cost even if there is no physical damage. Each is discussed in turn.

### A.    Subject Matter Jurisdiction

The Montreal Convention imposes liability on air carriers only if "the damage . . . sustained took place during the carriage by air." Montreal Convention art. 18 ¶ 1. The Second Circuit has held that "carriage by air" includes things that happen inside the airport, but that the Convention "draws the line at the airport's border." *Victoria Sales Corp. v. Emery Air Freight, Inc.*, 917 F.2d 705, 707 (2d Cir. 1990). Agility argues that because the problem was improper road transport, the Montreal Convention does not apply.

Since the answer to this question is intertwined with the merits, it is best to assume—for now—that the event which caused the alleged damage occurred at Frankfurt Airport. Subject matter jurisdiction, like the merits of the case, turns on whether Article 18 covers the type of loss that Indemnity suffered—inspection cost of undamaged cargo. If the inspection cost is a cognizable harm under Article 18, then the event which caused the damage arguably occurred when the engine was loaded onto an improper truck while in Frankfurt Airport. And since that event happened within the airport borders, the Montreal Convention might apply. *See Victoria Sales*, 917 F.2d at 707 ("'transportation by air' would include a loss occurring while the cargo was in the air *or* on the ground but within the confines of the airport's boundaries"). Thus, the ultimate question is whether the inspection cost is a cognizable harm under Article 18, which is discussed below.

### B.    Standing

Agility next argues that Indemnity lacks standing to sue in GE Capital's shoes. Agility contends that only the consignor and consignee (*i.e.*, the shipper and recipient) can sue under the

Montreal Convention.  The air waybill names LCI as the shipper and Lufthansa Technik as the consignee.  Thus, according to Agility, neither GE Capital nor its insurer has standing to sue.

This question is really two questions: (1) whether GE Capital can sue even though it is not named on the air waybill, and (2) if so, whether Indemnity can sue in GE Capital's shoes.

Both questions are answered by the Second Circuit's opinion in *Commercial Union Insurance. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448 (2d Cir. 2003).  There, the court noted that aside from one non-relevant provision, "the [Warsaw] Convention does not discuss which parties have standing for cases of damage to cargo."  *Id.* at 459.  The court rejected the argument that the consignor and consignee are the only relevant parties.  Rather, it held that "a party not named in a contract for carriage who under local law would have a right to sue through a legal relationship with the consignor would likewise have such a right under the Warsaw Convention."  *Id.* at 460.  And though *Commercial Union* dealt with the Warsaw Convention, the court noted that the Montreal Convention's amendments and legislative history further support, rather than alter, the court's conclusions as to standing.  *Id.* at 460 n.2.

Thus, the key issue as to the first question is whether GE Capital had a legal relationship with Agility making GE Capital the real party in interest.  *See id.*  Here, there is enough evidence to conclude that GE Capital, rather than LCI, was the real party in interest.  GE Capital sent the engine shipping request.  (Dkt. No. 29-2.)  The resultant spot quote indicated that the shipment would be pursuant to an existing contract between GE Capital and Agility.  (Dkt. No. 29-3 at 1.)  And as a GE Capital employee testified, LCI was merely a storage company where GE Capital kept the engine while awaiting transport.  (Dkt. No. 19-1 at 24–25.)  These facts indicate that GE Capital was the real party in interest, or, at minimum, create a genuine factual dispute on the issue.

The second question has a more straightforward answer: if GE Capital can sue, so can its insurer. "Plaintiff, as an insurer subrogee of [a party to the shipping agreement], accedes to all the rights that its insured would have were it to have brought the instant suit." *Commercial Union*, 347 F.3d at 457; *see also id.* ("To determine whether [the insurer] has standing, we must therefore decide if [the insured] itself would have had such standing."); *Paramount Exp. Co. v. British Airways PLC*, No. 14 Civ. 7859, 2016 WL 7655805, at *12 (C.D. Cal. June 16, 2016) (holding that subrogated insurer has standing to sue in shoes of insured). And since GE Capital has standing to sue, Indemnity does too.

### C.  Does the Montreal Convention Cover Inspection Costs in the Absence of Actual Harm?

Having cleared the jurisdictional hurdles, there is one final obstacle for Indemnity: the Montreal Convention allows recovery only for "destruction," "loss," or "damage" to cargo, but says nothing about inspection cost of undamaged cargo.

The two key facts are not subject to a genuine dispute: (1) the engine was improperly transported, but (2) the improper transport did not damage the engine.[1] Thus, the question is whether the Montreal Convention allows recovery for inspection costs if there was no physical damage. This is a novel question, and the Court is aware of no other court addressing this issue.

If this were a regular contract case, this question would be easy. If A breaches a contract with B, and B incurs inspection costs as a result of the breach, B can usually recover the inspection costs as incidental damages. *See, e.g.*, N.Y. U.C.C. Law § 2-715 ("Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection

---

[1]      Although Agility's expert noted that one of the bearings was damaged, he reported that "the damage was not transport-related but was rather the result of operational wear and tear." (Dkt. No. 19-7 at 12.) That expert also concluded that "[n]o transport-related damage could be ascertained." (*Id.*)

. . . of goods rightfully rejected. . . .").  But this is not a regular contract case.  Indemnity sues solely under the Montreal Convention, so unless the Convention allows the type of damages Indemnity seeks, Indemnity cannot recover.

The text[2] of Article 18 of the Montreal Convention states:

> The carrier is liable for damage sustained in the event of the destruction or loss of, or damage to, cargo upon condition only that the event which caused the damage so sustained took place during the carriage by air.

Montreal Convention, art. 18 ¶ 1.

This provision clearly delineates three types of events that trigger liability:

(1) "destruction . . . of . . . cargo";

(2) "loss of . . . cargo"; and

(3) "damage to . . . cargo."

*Id.*

None of the three categories applies here.  The engine was not damaged, destroyed, or lost.  And though it is a harsh result, the Convention's plain text bars recovery.

Because this result is harsh, the Court invited supplemental briefing on this issue. Indemnity points to a handful of cases awarding inspection costs, but in all of those cases, the cargo was actually damaged.  (*See* Dkt. No. 51 at 1–2.)  It is one thing to say that a carrier is liable for the inspection cost of damaged cargo.  It is quite another to say that a carrier is liable for inspection costs even when the cargo was not damaged.  Once the cargo is damaged, destroyed, or lost, the carrier is arguably liable for inspection costs; but if the cargo is not damaged, destroyed, or lost, Article 18 imposes no liability.

---

[2]    While the Warsaw Convention's original language is French, and thus all textual interpretation must begin with the French text, the Montreal Convention has several original languages, including English, all of which are equally authentic.  *Ehrlich*, 360 F.3d at 391 n.17.

This distinction is bolstered by the case law on Article 17, which deals with injury to airline passengers.  It states that:

> The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Montreal Convention art. 17 ¶ 1.

The courts have imposed a clear prerequisite of bodily harm under Article 17.  In *Eastern Airlines, Inc. v. Floyd*, the Supreme Court held that "an air carrier cannot be held liable under Article 17 when an accident has not caused a passenger to suffer death, physical injury, or physical manifestation of injury."  499 U.S. 530, 552 (1991).  Thus, if an airline's negligence causes pure mental injury to a passenger, that passenger cannot recover.  The Second Circuit later held that even if the passenger did suffer bodily injury, the airline is not liable for mental injury unless the mental injury was actually caused by the bodily injury.  *See Ehrlich*, 360 F.3d at 400 ("[A] carrier may be held liable under Article 17 for mental injuries only if they are caused by bodily injuries.").  Thus, if a passenger scrapes her knee during a botched landing and also suffers emotional trauma from the crash, she cannot recover for any mental injury not caused by the scraped knee.

These Article 17 cases can be analogized to Article 18 cases.  Both provisions allow recovery for "damage" caused by specific events: Article 17 imposes liability "for damage sustained in case of death or bodily injury of a passenger"; Article 18 imposes liability "for damage sustained in the event of the destruction or loss of, or damage to, cargo."  Like Article 17, which precludes recovery for non-bodily injury unless it was caused by an underlying bodily injury, Article 18 precludes recovery for inspection cost unless it was caused by physical destruction, loss, or damage to the cargo.

In sum, the Montreal Convention does not allow recovery if the sole harm was the cost of inspection. And because of the Convention's broad preemptive effect, Indemnity must either recover under the Convention or not recover at all. *See Magan v. Lufthansa German Airlines*, 339 F.3d 158, 161 (2d Cir. 2003) ("A passenger whose injuries fall within the scope of the Warsaw Convention is either entitled to recovery under the Convention or not at all."). Indemnity has not pointed to any other provision of the Montreal Convention that allows it to recover for inspection costs, so its suit fails.[3]

This result is admittedly discomfiting. Agility failed to transport the engine properly, and Lufthansa Technik did the right thing by checking that the engine was safe to use. The rule applied here is arguably absurd: if the inspection reveals no damage, the carrier owes nothing; if the inspection reveals one loose screw, the carrier might be liable for the entire inspection bill. But there is no way around the Convention's clear text.

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED, and Plaintiff's motion for summary judgment is DENIED. Judgment shall be entered accordingly.

The Clerk of Court is directed to close the motions at Docket Numbers 16 and 27 and to close this case.

SO ORDERED.

Dated: June 21, 2018
New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[3]    Indemnity points to Article 29, but that provision deals with limitations to liability and does not create an independent basis for liability.